CIVIL SUIT NO. C-2011-197
DIVISION B

| | |
|---|---|
| ROY O. MARTIN LUMBER COMPANY, L.L.C., and<br>MARTCO LIMITED PARTNERSHIP,<br>    Plaintiffs | THIRTY-THIRD JUDICIAL DISTRICT COURT |
| VERSUS | PARISH OF ALLEN |
| THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY<br>    Defendant | STATE OF LOUISIANA |

FILED: _____        DEPUTY CLERK: _____

## PETITION FOR BREACH OF CONTRACT AND DAMAGES

The petition of ROY O. MARTIN LUMBER COMPANY, L.L.C., a Louisiana Limited Liability Company, with its headquarters in Rapides Parish, Louisiana ("MARTIN") and Martco Limited Partnership, a Louisiana Partnership in Commendam with its headquarters in Rapides Parish, Louisiana ("MARTCO") (Collectively "ROM" or "PLAINTIFFS") respectfully represent:

1.

Made defendant herein is:

A)  HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY, a foreign insurance company doing business in Allen Parish, Louisiana ("HARTFORD"). HARTFORD's principal business address is One State Street, Hartford, Connecticut, 06102, and its registered agent for service of process in the State of Louisiana is the Secretary of State.

HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY is sometimes referred to herein as the "DEFENDANT."

2.

HARTFORD is party to a contract of insurance, identified as policy number SRI5646254 (the "Policy") purchased by MARTIN, covering a policy term from January 1, 2009 through January 1, 2010, a copy of said Policy is attached hereto as Exhibit "A" and is incorporated by reference as if set forth here *in extenso*. MARTCO is one of the MARTIN related business entities listed as additional insured persons under the Policy.

3.

The Policy provides coverage for certain losses incurred at a number of ROM's premises,

A TRUE & CORRECT COPY OF ORIGINAL FILED: APR 2 8 2011
OBERLIN, LA. APR 2 8 2011
_Judith Barlow_
Deputy Clerk of Court
ALLEN PARISH, LA

**EXHIBIT B**

including ROM's Oriented Strand Board Manufacturing Plant, (the "OSB Plant") located at 192 Pawnee Rd., Oakdale, Allen Parish, Louisiana, enumerated in the Policy as "Location Number 6" on the Schedule of Locations. Coverage provided by the Policy, applicable to the OSB Plant, includes losses incurred to Real or Immoveable Property, Personal or Moveable Property, Business Interruption losses, Contingent Business Interruption losses, Extra Expense losses, Boiler and Machinery losses, and Service Interruption losses, all of which are defined in the Policy.

4.

ROM's OSB Plant is comprised of a number of interrelated pieces of industrial equipment, including two process combustion chambers which are fueled with waste tree bark produced as a waste byproduct of the Oriented Strand Board ("OSB") manufacturing process (the "Bark Burner(s)"). The Bark Burners, operating together supply hot combustion gasses to three process heaters, where heat is transferred from the hot combustion gasses to an oil based liquid used as a process heating medium. The oil then distributes process heat to other process units at the OSB Plant. Extremely high temperatures are produced inside the Bark Burners during the normal operation of the OSB Plant.

5.

Pursuant to the Policy, the Boiler and Machinery coverage includes compensation for an "Occurrence that is an Accident to an Object." The Bark Burners are Objects within the meaning of the Policy.

6.

During normal operations at the OSB Plant, the Bark Burners are designed and expected to operate twenty four hours a day, seven days a week. They are shutdown only when there is a failure requiring them to be shutdown, or during periodic planned shutdowns of the OSB Plant, when maintenance is performed on various items of equipment which must be shutdown for maintenance, but which cannot be shutdown during normal operation.

7.

On November 17, 2009, personnel at ROM's Oakdale OSB Plant discovered unburned bark and pieces of iron grate in the ash being continuously removed by conveyor from the east Bark Burner. The iron grate is a heavy meshed metal structure on which the unburned bark is delivered into the Bark Burner and on which the bark is burned. Upon further inspection, it was determined that internal components of the east Bark Burner had collapsed and fallen onto the grate, causing

additional damage by breaking segments of the iron grate.

8.

The east Bark Burner was shut down and allowed to cool. Further inspection after the east Bark Burner was cooled revealed that the fallen internal components of the east Bark Burner included refractory brick and steel rods or "Hangers." The Hangers are normally configured in an array over the area of the interior roof of the Bark Burner, and hold the refractory brick in place. Inspection showed that several Hangers had failed. The failed Hangars, a large area of refractory bricks, and other debris from the internal collapse of the Bark Burner had fallen onto the grate below, causing damage to the grate.

9.

After the east Bark Burner was shut down on November 17, 2009, it was allowed to cool to a safe working temperature for entry by workers, and the broken Hangers, fallen refractory brick, and broken grate systems, along with other debris, were removed from the Bark Burners. Repairs then proceeded, restoring the east Bark Burner to a condition suitable for resumed operation. The total duration of the shutdown and restart was twelve full days. The entire shutdown period was necessary to repair the east Bark Burner and return it to a fully operational state.

10.

The sudden, accidental, mechanical failure of the Bark Burner on November 17, 2009 (the "Accident") was one Occurrence of an "Accident to an Object" within the meaning of the Policy.

11.

As a direct and immediate consequence of the Accident, ROM incurred damage to property, financial business losses, loss of income and extra expenses.

12.

During the repairs to the east Bark Burner, ROM had to use purchased natural gas as fuel to supplement production of process heat used to dry wood flakes used in the OSB manufacturing process. The use of natural gas mitigated the extent of lost profits from reduced production during startup that would have otherwise resulted from the business interruption. The cost of the purchased natural gas was substantial compared to the bark normally used as fuel at no cost. The extra expense of the purchased natural gas is a recoverable loss under the Policy.

13.

On February 16, 2010, ROM timely made a claim to Hartford for payment pursuant to

coverage provided under the Policy. Hartford denied coverage as to most of the claim, and alleged that the only covered losses did not exceed the single Occurrence deductible of $1,000,000.00. ROM requested reconsideration of the claim, explaining its reasoning in support of the originally submitted claim. Hartford sustained its position, denying that any payment was owed to ROM under the Policy.

14.

After ROM timely filed its claim, it made the insured premises accessible for inspection by HARTFORD or its agents, and provided all necessary proof of damages and business interruption losses in support of the claim.

15.

The estimated Actual Loss Sustained by ROM due to business interruption, damage to Boilers and Machinery, and other insured losses claimed by ROM under the Policy is $2,779,878.05.

16.

In denying ROM's claim, HARTFORD asserted that there was not an "Accident" to an "Object" as defined in the Policy. HARTFORD's clearly incorrect and narrowly limiting interpretation of the Policy was asserted for the purpose of avoiding any payment due to ROM and was made in bad faith because HARTFORD knew that was an incorrect interpretation of the Policy.

17.

The above described losses were not caused by ROM's fault, and ROM acted prudently to mitigate the damages resulting from the Accident.

18.

HARTFORD has failed to initiate loss adjustment timely, and to take affirmative steps to accumulate the facts necessary to adjust the claim; has arbitrarily, capriciously and without probable cause failed to make payment on a valid claim; and was arbitrary, capricious and without probable cause in failing to pay a claim within sixty days.

19.

HARTFORD has failed to comply with its obligations under the Policy, and as such is in breach of a contract of insurance and is liable for all amounts owed under the Policy and *all* resulting damages.

20.

Plaintiffs request a trial by jury.

WHEREFORE, Petitioners, MARTIN and MARTCO, pray that Defendant, Hartford Steam Boiler Inspection and Insurance Company be served with a copy of this petition and after due proceedings are had herein, there be a judgement in favor of MARTIN and MARTCO and against HARTFORD:

- A) awarding MARTIN and MARTCO the full amount due under the Policy, including the cost of repairing damage to its Boiler Machinery, repairing damage to property, business interruption losses, and extra expense of operation;

- B) awarding MARTIN and MARTCO all amounts payable as penalties, costs, and additional damages pursuant to Louisiana's Revised Statutes, including attorney's fees;

- C) awarding MARTIN and MARTCO interest from the date payment by HARTFORD was due pursuant to the contract of insurance;

- D) awarding such other damages that MARTIN and MARTCO are entitled to as shall be shown at trial; and

- E) For all just and equitable relief.

Respectfully submitted,

Gold, Weems, Bruser, Sues & Rundell

By: _____
Raymond L. Brown (La. Bar #1737)
Lottie L. Bash (La. Bar #26186)
Stephen A. LaFleur (La. Bar #28648)
2001 MacArthur Drive
P.O. Box 6118
Alexandria, LA 71307-6118
Ph: (318) 445-6471
Fax: (318) 445-6476

**ATTORNEYS FOR PLAINTIFFS, ROY O. MARTIN LUMBER COMPANY, L.L.C. and MARTCO LIMITED PARTNERSHIP**

**PLEASE SERVE:**

HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY;
Through the Louisiana Secretary of State:
J. Thomas Shedler
8585 Archives Ave.
Baton Rouge, Louisiana 70804

CIVIL SUIT NO. _____
DIVISION _____

| | |
|---|---|
| ROY O. MARTIN LUMBER COMPANY, L.L.C. and MARTCO LIMITED PARTNERSHIP, **Plaintiffs** | THIRTY-THIRD JUDICIAL DISTRICT COURT |
| **VERSUS** | PARISH OF ALLEN |
| THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE COMPANY **Defendant** | STATE OF LOUISIANA |

STATE OF LOUISIANA

PARISH OF RAPIDES

## VERIFICATION

BEFORE ME, the undersigned authority, personally came and appeared:

### E. SCOTT POOLE

who, after being duly sworn, did depose and say:

That he is the Senior Vice President of the insured, Roy O. Martin Lumber Company, L.L.C., and he is Vice President of Roy O. Martin Lumber Management, LLC, which is the General Partner of Martco Limited Partnership, that he has knowledge regarding the operation of the Martco Limited Partnership OSB manufacturing facility, and that all of the allegations contained in the foregoing suit are true and correct; and that defendant therein is indebted to petitioners, for the amounts claimed therein, together with all attorney's fees in connection with the foregoing suit and all costs of such proceedings.

By: _____
E. SCOTT POOLE

SWORN TO AND SUBSCRIBED BEFORE ME, this 28th day of April, 2011.

_____
NOTARY PUBLIC

Patti D. Busby, Notary Public
Rapides Parish, Louisiana
Notary No. 42297